## SHULTZE *against* DIEHL and DIEHL.

On the 6th April, 1830, the act of assembly which provides that the lien of a mort-
gage shall not be affected by a sheriff's sale, was approved by the Governor.
This act on the 20th of April was published in a paper printed in Adams county,
and on the 23d in a paper printed at Harrisburg. On the 10th April the sheriff
of Adams county, having previously regularly advertised the same, sold the land
of K to D, who had before that mortgaged the same to A. Before the sale, and
before the passage of the said act of assembly, S, as the attorney of the mortgagee,
he being also the attorney of the plaintiff in the execution, gave notice to the
plaintiff that the mortgage money would be claimed out of the sale. It was the
understanding of the sheriff, and the general understanding at the time of the
sale, that it would be so paid, but the said act of assembly was not known by any
person present at the sale. *Held:* that the mortgagee A was entitled to be paid
his mortgage out of the fund raised by the sale, in preference to a subsequent
judgment creditor ; and that the purchaser took the land sold, clear of the lien of
the mortgage.
Where at the time of a sale, the seller or any person present represents the title to
be in a certain way, and it turns out not to be so, yet as against the person making
the representation, it shall be as represented.
Where the time from which a law is to go into operation is fixed in the law itself,
Courts cannot alter it.

THIS was an appeal from a decree of the Court of Common
Pleas of the county of Adams, distributing the money, raised
by the sale of the real estate of one *Peter Keefhaver.*

The controversy arose between *Samuel Diehl*, the purchaser,
and *David Diehl* who claimed to be paid out of the fund in
Court, the amount of a mortgage on the land sold, given by *Keef-
haver* to him, and *David Shultze*, the appellant, who claimed
the fund upon a judgment obtained against *Keefhaver*, subsequent
to the execution of the mortgage.

The sale of the land out of which the fund was raised, was
made on the 10th of *April*, 1830, and the deed to *Diehl*, the
purchaser, was acknowledged in open Court, on the twenty-eighth
of the same month.

On the 6th day of *April*, 1830, the act entitled "a supplement
to an act entitled, 'an act for taking lands in execution for the
payment of debts,' passed in 1705," was passed.

This act was published in a newspaper printed in the county,
on the 20th *April*, 1830, and on the 23d of *April*, in one printed
at *Harrisburg.*

By this act it is provided that where the lien of a mortgage
upon real estate is prior to other liens "the lien of such mort-

35

gage shall not be destroyed, or in any way affected, by any sale made by virtue or authority of any writ of *venditioni exponas.*"

A prior sale of this property had been made by the sheriff, some months before, to the same purchaser, which had been set aside by the Court. Both sales were on the same judgment.

Between the sales, *Mr. Stevens*, (who was counsel of the plaintiff in the execution upon which the land was sold,) as the attorney of the mortgagee gave notice, that the mortgage money would be claimed out of the proceeds of the sale, and a similar notice was given by the mortgagee himself.

It was in proof by the sheriff who made the sale, that this act of assembly in reference to mortgages was not known by him at the time the sale was made, and that it was not spoken of. That it had been always the practice since he had been in office, to pay mortgages out of the proceeds of sale, and that when he received the notice on behalf of the mortgagee, and at the sale, it was his understanding, and as far as he knew, the general understanding, that the mortgage money would be paid out of the sale, and that he gave notice to the mortgagee to be present at the appropriation of this fund.

A decree of the Court below having passed for the mortgagee, the judgment creditor appealed to this Court.

*Miller* for the appellant

Referred to the act of assembly of the 6th *April*, 1830, *Pamphlet Laws* 293, and contended, that as this act changed the law, before the sale was made, the mortgage remained charged upon the land, and the whole fund should have been decreed to the judgment creditors of the defendant in the execution.

*Penrose* for the appellees:

The language of the act of assembly referred to is peculiar, and is now, for the first time, presented for construction. It is, that "the lien of such mortgage shall not be destroyed, or in any way affected." It is not that the mortgage shall not be paid out of the sale, but that it shall not be "destroyed or affected." If the property mortgaged be sold for enough to pay off the mortgage, and the whole amount be paid to the mortgagees, it is questionable whether such a case would fall within the language of the act. It certainly does not within the supposed mischief designed to be remedied by it. The mischief complained of was, that a judgment creditor, junior to a mortgage, might, and frequently did sell the property mortgaged for a small sum, and thus destroy

(Shultz *v.* Diehl and Diehl.)

the interest of the mortgagee, without his knowledge or concurrence But when the mortgage is paid off, he cannot complain that he is affected injuriously.

But again; this act of assembly, it is manifest, was made for the benefit of mortgagees; and the principle is well established, that the person for whose benefit a rule exists, may always dispense with it. Here the mortgagee did dispense with this act of assembly in his behalf, by a notice, that he should claim his mortgage money out of the proceeds of sale, and by insisting on doing so in the distribution made by the Court. *The Farmers' Bank of Reading* v. *Boyer and others.* 16 *Serg. & Rawle*, 48.

But no act of assembly is passed until it is published. Law is "a rule of civil conduct prescribed," and publication is essential to give it the character of a law. It may be notified, as in England, *viva voce*, by officers appointed for that purpose, or by writing or printing. 1 *Black. Com.* 46. Here, acts of assembly are published first in newspapers, then in pamphlets, and afterwards in volumes.

Although, then, this act was approved by the governor on the 6th April, it was not published until the 20th of April, and its existence was wholly unknown at the time of the sale, which took place on the tenth; so far from the seat of government, that it was almost impossible then to have obtained a knowledge of it.

If, however, it be considered, that this act of assembly became a law on the 6th of April, so as to affect individuals so remote from the place of its passage that no publication of it had reached them, yet it cannot be applied to the case of a sale, which was not made after the passage of the act. Now a sheriff's sale does not consist in the mere outcry of the property, and knocking it down to the purchaser. The writ upon which it is made, the levy on the writ, and the advertisements required by the act of assembly, are parts of the proceeding which constitute the sheriff's sale. The issuing of the writ, the levy and the advertisements, were before the passage of the act. The sale was commenced then at the time of the passage of the act; and the sale was not therefore made after the act. So the act of 14th March, 1814, explanatory of the "act for the sale of vacant land in this Commonwealth," does not extend to sales commenced before its passage. *Bedford* v. *Shilling*, 4 *Serg. & Rawle*, 401.

But no matter how the law might be, it would be controlled by the express understanding and agreement of the parties, *modus et conventio vincunt leges.* Here the plaintiff, who made the sale, and the mortgagee, the only persons who had an interest in it, concurred in the agreement, that the sale should be made clear of the lien of the mortgage.

(Shultze *v.* Diehl and Diehl.)

*Stevens* in reply.

If the lien of the mortgage is not to be affected, the money raised by the sale cannot be applied to it; for if not affected by the sale, it would continue to exist after it, which would not be the case if it were paid off by the sale. There was a difference of opinion, in regard to the payment of mortgages out of the proceeds of a sheriff's sale. It was a vexed question. The Supreme Court settled this question, and this act was passed, to change the law as ascertained by this decision. It is to have a uniform effect, and afford the same rule to every man. It was passed for the benefit, as well of the defendant, as the mortgagee, and it must be the concurring act of all parties which will destroy its effect.

The question of actual knowledge of a law, is not to be inquired into; every one is presumed to have it. In all cases where no specific time is named, it takes effect from its passage. The day being fixed, the time when it shall take effect is not open to be questioned. It is settled by the legislature, who alone are responsible: and the law, as laid down in *Blackstone*, is to admonish the legislator, and not to regulate the decision of the judge. An act of assembly is promulgated when it is enrolled and passed. If the legislature fix a precise time when it is to go into operation, and the pamphlet laws, which are the only mode of promulgation with us, are not published until after that time; this Court would not say, that it should not take effect on the day fixed by the legislature. If the act be not ambiguous, the Court is bound. If it were established as a rule, that a reasonable time should be allowed from the passage of an act, before it became a law, who would decide as to what time is reasonable. The time would be different, under different circumstances, in different parts of the state.

The passage of an act is when it is returned to the legislature, with the signature of the governor. The legislature here have fixed this time, and nothing is left for construction. The sale was not made until after the act was passed. The day on which land is sold, is the day of sale. The advertisements are in the nature of a negotiation for the sale, an offer of the property for sale. The words of this act of assembly apply to the case, and no agreement to dispense with the act has been proved. Here too the purchaser took the deed with his eyes open.

The opinion of the Court was delivered by

HOUSTON, J.—If there were nothing in this case, but the construction of the act of assembly, and the question as to the time from which a law, expressed as this is, takes effect, the decision of the Court could not be supported—For where the time from

(Shultze *v.* Diehl and Diehl.)

which a law is to go into' operation is fixed in the law itself, the Courts cannot alter it.

Before the passage of the act of the 6th April, 1830, the law was settled, that the purchaser of land at sheriff's sale, took it clear of incumbrances, and the purchase money went to the lien creditors, according to their legal priority; but, even then, a levy, subject to a specific lien, advertisement, sale and deed subject to it, did not pass the land free from that lien—but the purchaser took subject to it; because all the parties to a transaction can modify the terms as they please, provided they do not contravene express written law or public policy.

In the present case, every person interested understood and agreed, that the purchase was to to be clear of incumbrances. Every person bid on that idea, and every person believed the law required a sale on those terms, and would establish those terms, unless there was an express agreement to the contrary. The very plaintiff, who now wishes to disregard this, directed the sheriff so to sell; and the purchaser bought on the terms of a title, clear of incumbrances, not merely because the law was so generally, but also because it was so expressly understood at the time of the sale. The application on the part of the person, who expressly directed the sheriff to sell in that way, to throw the land on the purchaser, subject to an incumbrance equal to one-third of its value, is most unreasonable. A Court is often called on to consider and decide in cases where settled principles are involved, which, in that case, appear to conflict. A man who purchases is bound, according to his contract, as understood by himself and the seller—and where all understand the contract in the same way, I know of no case in which a party is subject to any conditions, or liable to any burden, not contemplated by any one. If the bargain is binding at all, it binds as it was made and understood—and this principle is as plain and as obligatory on a Court as any other. No one is injured by the decision of the Court. It was said that the defendant, whose land was sold, was injured; but I apprehend it was said without consideration; for if the land had been sold, subject to a mortgage, for $500, would have sold for less by $500.

There is another rule, equally well settled—where, at the time of a sale, the seller, or any person present, represents the title to be in a certain way, and it turns out not to be so, yet as against the person making the representation, it shall be as represented. Now here the person applying for this money, by his attorney, directed this land to be sold free of incumbrances; although the client would not be bound by his attorney's opinion or declarations as to the titles, yet as the attorney had the direction of this sale, and, to a certain extent, the power of directing the terms, it never can be,

(Shultze *v.* Diehl and Diehl.)

that he should direct a sale to be publicly made on terms of giving the purchaser a title clear of incumbrances, & the client compel that purchaser to take it subject to incumbrances. To be sure the attorney was not culpable in directing those terms; for, at that time, such was the general law. The wrong is, in now endeavouring to impose a different contract on the purchaser.

I have intimated, that in consistency with former decisions, a sale may be made under the present law, by which a purchaser may get the land clear of a prior mortgage; but to effect this, it must be with the consent of the mortgagee, the plaintiff at whose suit it is selling, and of the defendant, whose land is so sold. And this ought to appear in the levy, advertisement and conditions of sale and in the deed. It will not do to let it rest on parol proof of what was said at the time of the sale; it must, in some shape, appear in the proceedings—must form a part of the record of the sale.

A case, like the one before the Court, cannot again occur under the present act; and we have thought it right to intimate the necessity of hereafter making any special terms, in a sheriff's sale, a part of the record. The obvious justice of this case, arising from the universal understanding of all parties at this sale, together with the fact that it took place before any one of the parties knew of this law, has induced us to consider this as an exception to what we consider will be the rule hereafter, and as decided on the special facts which occurred—and which would govern any other case, depending precisely on the same facts.

Judgment affirmed